

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1206-10

**THE STATE OF TEXAS**

**v.**

**PAUL DAVID ROBINSON, Appellee**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### FREESTONE  COUNTY

**COCHRAN, J., filed a concurring opinion in which HERVEY, J., joined.**

O P I N I O N

I join the majority opinion.  I write separately only to distinguish the shifting burdens

at a motion to suppress hearing from those shouldered by the proponent of evidence at trial.

In a motion to suppress hearing, the movant is asserting some sort of illegal conduct,

perhaps a violation of the federal constitution or perhaps a statutory violation.  The law starts

with the presumption of proper and lawful conduct.  For example, it assumes that the police

have acted in compliance with all constitutional and statutory requirements in making an

arrest.[1] The defendant bears the burden of producing evidence that shows that an arrest was illegally made, evidence was illegally obtained, and so forth. Once the defendant produces some evidence of impropriety or illegality, then the burden shifts to the State to rebut that showing. Normally, the burden of persuasion, as well as production, rests on the movant.[2] He must prove his case that the normal and proper procedures were not followed in a particular case.[3] However, with certain constitutional claims, once the movant has produced some evidence to rebut the presumption of proper police conduct, the prosecution must not only rebut the movant's evidence, but shoulder the ultimate burden of persuasion.[4]

---

[1] *See Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986) ("As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State."), *disapproved in part on other grounds by Handy v. State*, 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006); *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) ("To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.").

[2] *See Pham v. State*, 175 S.W.3d 767, 773-74 (Tex. Crim. App. 2005) ("We have long held that 'the burden of persuasion is properly and permanently placed upon the shoulders of the moving party. When a criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task to prove his case.'") (quoting *Mattei v. State*, 455 S.W.2d 761, 766 (Tex. Crim. App. 1970) which in turn was quoting *Rogers v. United States*, 330 F.2d 535 (5th Cir. 1964)).

[3] *See Rogers*, 330 F.2d at 542; *see also United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) ("A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional."); *United States v. Evans*, 572 F.2d 455, 486 (5th Cir. 1978) ("The burden is on the movant to make specific factual allegations of illegality, to produce evidence, and to persuade the court that the evidence should be suppressed.").

[4] *See, e.g., United States v. de la Fuente*, 548 F.2d 528, 533-34 (5th Cir. 1977) (setting out general rule that the movant bears burden of persuasion as well as production subject to certain well-defined exceptions, including (1) warrantless arrest, (2) a defendant's waiver of his right against self-incrimination in the context of a custodial interrogation, and (3) when

For example, in this case, Mr. Robinson could meet his initial burden of showing an illegal arrest by producing some evidence that (1) he was arrested, and (2) the police did not have a warrant.[5]  The burden would then shift to the State to show either (1) the police did, in fact, obtain a warrant, or (2) the reasonableness of the warrantless search.[6]  Here, however, the State stipulated that this was a warrantless arrest, thus accepting the burdens of production and proof to show the reasonableness of the arrest.

Mr. Robinson also claimed that the person who withdrew his blood specimen at the hospital was not a qualified technician under Texas law.[7]  He had the burden, therefore, to produce some affirmative evidence that the person who withdrew his blood was not qualified.  If he made a *prima facie* showing that the person was not qualified, then the burden would shift to the State to rebut that showing.[8]  But the burden on this statutory-compliance issue is not one of those special constitutional claims in which the State must shoulder the burden of proof once the defendant makes an initial showing.  Here, the normal presumption of proper procedures and conduct thrusts both the burden of production and the

---

defendant establishes existence of illegal wiretap; in each of those cases, the government must shoulder the burden of proof once the defendant produces evidence to support his claim).

[5] *Russell*, 717 S.W.2d at 9.

[6] *Id.* at 9-10.

[7] *State v. Robinson*, 325 S.W.3d 212, 215 (Tex. App.–Waco 2010).

[8] *See Roquemore v. State*, 60 S.W.3d 862, 869-70 (Tex. Crim. App. 2001) ("[O]nce the defendant produces evidence of a [specific statutory] violation, the burden then shifts to the State to prove compliance with [that section].").

ultimate burden of persuasion upon the movant.[9]  This is a sensible policy because, in the vast majority of cases, a person who draws blood in a hospital is likely to be qualified to do so.  When we go to the emergency room and have blood drawn, we do not normally ask the technician who draws it if he is qualified.  As reasonable people, we presume that the hospital is unlikely to employ unqualified personnel.  The law, like reasonable people, presumes that people do their jobs properly and that those who do a certain job are, in fact, qualified to do that job.  There may be instances in which a rogue "Frank Abagnale Jr."[10] imposter sneaks into the hospital and takes over the technician's job, but these instances are so unlikely that the law casts both the burden of production and persuasion on the movant who is challenging the normal and probable routine.

In this case, Mr. Robinson did not produce even a scintilla of evidence that the person who drew his blood was unqualified.  The only witness who testified at the hearing was Officer Vercher, the arresting officer, and he did not know precisely who drew the blood at the hospital.  As the court of appeals stated,

> As for the person who drew Robinson's blood, [Officer] Vercher said he did not know who the person was or remember what the person looked like. It was his first time to take a suspect to a hospital to have blood drawn. He did not write down the person's name, and he does not remember which arm the blood

---

[9] *See State v. Kelly*, 204 S.W.3d 808, 819 & n.22 (Tex. Crim. App. 2006) (movant in motion to suppress is "the party with the burden of proof [who] assumes the risk of nonpersuasion"; thus it was defendant's burden to produce evidence to support a finding that she did not consent to blood draw taken in hospital).

[10] *See* CATCH ME IF YOU CAN (Dreamworks 2002), the movie based on the real life story of Frank Abagnale, Jr., who successfully impersonated a Pan-Am pilot, doctor, and prosecutor.

was drawn from, who prepared the site for the draw, or how the site was prepared.[11]

That testimony certainly does not show (or even suggest) that the person who drew Mr. Robinson's blood was unqualified. The court of appeals then noted, that, on redirect, Officer Vercher

> said that a "nurse" in the emergency room took Robinson's blood sample. But on re-cross-examination, Vercher then admitted that his report states that an "emergency room technician" signed and sealed Robinson's blood specimen. In response to whether that emergency room technician was the same person as the "nurse" who took the blood or was just someone who witnessed it, Vercher said nonresponsively, "The same guy that took the blood has to sign off and seal it and put it back in the vile [ *sic* ]." Vercher did not recall whether the person did anything with the tube of blood, such as swirling it five times.[12]

While that testimony might raise some issue as to whether it was a nurse or an emergency room technician who drew the blood, it does not affirmatively show that either of them was unqualified to perform the job. Absent evidence to the contrary, reasonable people and the law presume that nurses and emergency room technicians are qualified to do their jobs.

In sum, there was no evidence that some unqualified imposter drew Mr. Robinson's blood. Thus, the burden never shifted to the State to rebut a *prima facie* showing of improper or unlawful conduct concerning the blood draw in the context of a motion to suppress.

Mr. Robinson contends that the State has the burden to show compliance with the state

---

[11] *Robinson*, 325 S.W.3d at 216.

[12] *Id.* at 216-17.

statute concerning the blood draw.[13]  Indeed it does–at trial.  As the proponent of evidence at trial, the State must fulfill all required evidentiary predicates and foundations.  Thus, at trial, the State will be required to offer evidence that the blood was drawn by a qualified person before evidence of the blood, the blood test, and the blood test results are admissible. Its burden at trial is to establish the admissibility of its evidence by a preponderance of the evidence.[14]

At a motion to suppress hearing, however, it is the burden of the movant (the person who opposes use of the evidence) to establish that the evidence should not be admitted because of unlawful conduct.[15]  And Mr. Robinson failed to satisfy both his burden of production and his burden of persuasion.

I join the majority opinion.

Filed: March 16, 2011
Publish

---

[13] *See* TEX. TRANSP. CODE § 724.017(a) ("Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter.").

[14] TEX. R. EVID. 104(a).

[15] *See State v. Kelly*, 204 S.W.3d 808, 819 & n.22 (Tex. Crim. App. 2006) (stating that the party with the burden of proof assumes the risk of nonpersuasion).